85　25
189　368

# Shamokin Valley and Pottsville Railroad Company et al. versus James Malone.

1. McG. *et al.* made a contract with the Philadelphia and Sunbury Railroad Company to do certain work on its main line, and by a verbal agreement extended it to the construction of a branch. M., plaintiff below, under them and with the consent of the company, did the work on this branch; after its completion the company made a mortgage to secure $500,000 of bonds, upon which proceedings were commenced, and the railroad property and franchises sold by the sheriff to the bondholders, and a new company organized by them under the title of the Shamokin Valley and Pottsville Railroad Company. M. brought suit in covenant, in the name of McG. *et al.*, to his use, against the Philadelphia and Sunbury Railroad Company, now known as the Shamokin Valley and Pottsville Railroad Company, for the balance due him for the work, and served the superintendent of the Philadelphia and Sunbury company. Judgment was entered in favor of plaintiff against the Philadelphia and Sunbury Railroad Company by default, and in favor of the Shamokin Valley and Pottsville Railroad Company, on a plea filed by it that it was not a party to the contract: *Held*, that while the suit should not have been brought in the name of McG. *et al.*, but in that of M., and not in covenant, but in assumpsit on the parol agreement to build the branch, and the judgment by default against the first-named company and that in favor of the last-named company on its plea were wrong, yet the master in this suit in equity by M. against the last-named company had a right to use the record of the judgment in connection with the evidence to ascertain the amount of the claim of M.

2. M., the contractor, having completed, in 1854, his work on the branch of the Philadelphia and Sunbury Railroad Company, and all the property and franchises of that company having been sold by the sheriff in 1857, it was *held*, that as the Act of March 24th 1773, entitled "An act for the limitation of actions," enacts that its provisions shall not extend to any corporation that may have suspended business, or made any transfer or assignment for the benefit of its creditors, or from any cause may have ceased from or suspended the ordinary business for which it was created, the Philadelphia and Sunbury Railroad Company having ceased, from the day of such sale, from its ordinary business, the Statute of Limitations stopped running against plaintiff from that day.

3. The work having been done by the contractor, and the railroad company, without his knowledge or assent, having subsequently made a mortgage upon which proceedings were begun and resulted in a sheriff's sale, it was *held*, that, although the purchaser at this sale had no notice of his claim, the mortgage and the judicial sale under it were void, so far as regarded the paramount lien of his claim. Fox *v.* Seal, 22 Wall. 424, followed.

4. The assets of an insolvent corporation are a fund for the payment of its debts, and a court of equity will enforce this trust in favor of creditors against the holders of such assets, and the Act of Assembly of April 4th 1862, authorizing a contractor to issue a writ of scire facias on his judgment and proceed as in other cases, does not give a remedy, where a judicial sale has extinguished the corporation and rendered it impossible for him to obtain a judgment against it.

July 13th and 14th 1877. Before Agnew, C. J., Sharswood, Mercur, Gordon, Paxson, Woodward and Sterrett, JJ.

Appeal from the Court of Common Pleas of *Northumberland county:* In Equity, No. 79, May Term 1877.

The bill was filed in this case October 22d 1868, by James

Malone against The Shamokin Valley and Pottsville Railroad Company and the Northern Central Railway Company.

The bill avers that Richard McGrann, Sr., Michael Barry, Richard McGrann and John J. Dougherty, on the 19th day of August 1852, made a contract with the Philadelphia and Sunbury Railroad Company to do all the work necessary to relay the track of the railroad from Sunbury to Shamokin, and also all the work of the extension of the railroad from Shamokin to a contemplated connection with the Minehill Railroad near Mt. Carmel; that it was agreed by plaintiff below and said parties, with the consent of the railroad company, that he should do a large part of the work which they were to do and should receive payment for said work from the company, and that he did a large amount of work and the company paid him in part, but left unpaid and due to him a large balance; that he brought suit to August Term 1859, No. 137, in the names of Richard McGrann *et al.*, to his use, against the said railroad company, and having declared on the contract above referred to he obtained a judgment against the company on the 1st of November 1861, for $8693.33; that the company, in pursuance of power granted by an act of legislature referred to, made, on the 5th day of August 1852, a mortgage to Shepherd Knapp of its railroad from its terminus at Sunbury to its intersection with the Minehill and Schuylkill Railroad, with its corporate franchises and appurtenances, together with certain tracts of land; that this mortgage was made to secure bonds amounting to $700,000; that subsequently the company made another mortgage of its railroad property and franchises, dated July 23d 1855, to Joseph R. Priestley, to secure bonds amounting to $500,000; that before the execution of this mortgage the company was indebted to plaintiff for work in the sum of $8693.33, and the same is still due, and that the last-mentioned mortgage was made without his knowledge or assent; that Priestley issued on said mortgage a scire facias to November Term 1857, obtained a judgment against the company for $575,688.82, issued a levari facias by virtue of which their railroad property and franchises were, November 2d 1857, sold to Edward S. Whelen for $1500; that Whelen purchased for certain bondholders, who were promoters of the Shamokin Valley and Pottsville Railroad Company, incorporated by an Act of Assembly approved March 25th 1858, and that Whelen conveyed, April 9th 1858, the railroad property and franchises so purchased to said new company; that this company had notice of plaintiff's claim of action against the Philadelphia and Sunbury Railroad Company, and have been requested to pay the same, but have refused to do so; that the Northern Central Railway Company, one of the defendants, on the 27th of February 1863, leased from the Shamokin Valley and Pottsville Railroad Company the said railroad property for the term of nine hundred and ninety-nine years, upon the payment of a certain annual rental:

that the Philadelphia and Sunbury Railroad Company has become dissolved and cannot be made a party to this suit. The prayer of the bill is, that the mortgage to Priestley, the proceedings thereon and the conveyance of Whelen to the Shamokin Valley and Pottsville Railroad Company, be declared fraudulent and void as against plaintiff; that a sequestrator be appointed, who, after paying the interest on the first mortgage of the company's expenses, shall pay plaintiff's claim with interest, or that the Northern Central Railway, the lessee, shall pay out of the rental the plaintiff's claim.

The answer of the Shamokin Valley Railroad Company admits the execution of the contract for the work to be done by McGrann *et al.*, but avers that defendants have no knowledge of the sub-contract with the plaintiff; it avers also that an action in covenant was brought by McGrann *et al.*, to use of plaintiff, against the Philadelphia and Sunbury, now known as the Shamokin Valley and Pottsville Railroad Company; that the last-named company filed a plea that the agreement was not the deed of said last-named company; that no other plea was filed in the suit; that August 9th 1861, after a jury had been sworn, it was withdrawn from the jury and a judgment by default entered against the Philadelphia and Sunbury Railroad Company, and on the special plea of the Shamokin Valley and Pottsville Railroad Company, in favor of that company; that damages were subsequently assessed against the Philadelphia and Sunbury Railroad. It admits the execution of the mortgage by the Philadelphia and Sunbury Railroad Company to Knapp to secure $700,000 of bonds, and also that of the mortgage to Priestley to secure $500,000 of bonds, and avers that the latter was duly authorized by law, and that the railroad property and franchises described in it had been vested in the Pottsville and Danville Railroad Company, a company organized under an Act of Assembly, passed April 8th 1826, to incorporate that company; that said property was sold by the sheriff of Northumberland county, December 28th 1850, and the sale was confirmed, and the purchasers, by virtue of the authority conferred upon them by law, organized a new company under the name of the Philadelphia and Sunbury Railroad Company; that by virtue of a certain Act of Assembly the said company was authorized to borrow money, issue bonds and secure the same by mortgage; that defendants do not know whether the said company, before or at the time of the execution of the mortgage to Priestley, was indebted to plaintiff. The proceedings of foreclosure under the mortgage and the purchase by Whelen are admitted, but it is averred that Whelen, at the time of the purchase, had no notice of plaintiff's claim, and that he acted for the bondholders, and subsequently, on March 25th 1858, an Act of Assembly was passed reciting said purchase and constituting the purchasers a new corporation under the name of Shamokin Valley and Pottsville Railroad Company, to which company Whelen, by deed dated

[Shamokin Valley & Pottsville Railroad Co. *v.* Malone.]

April 9th 1858, conveyed the railroad and property purchased by him. Notice of the suit in which the company filed its plea is admitted, but it is denied that it is liable to pay plaintiff's claim, as it purchased the said railroad and property in good faith and without notice of it; that February 27th 1863 a lease of the railroad and property was made to the Northern Central Railway Company for nine hundred and ninety-nine years; that no cause of action has accrued against the company defendant within six years, and the Statute of Limitations is pleaded; that Barry, to whom McGrann, Sr., and Dougherty, two of the contractors, had assigned their interest under the contract, and McGrann, Jr., settled with and received from the company $25,000 of stock in settlement of their claim, and they executed a release of all claims against the Philadelphia and Sunbury Railroad Company; that at the time of the sheriff's sale to Whelen no work was being done by plaintiff; that at this time the last-named company was in exclusive possession of the railroad and property; that plaintiff had not brought suit and gave no notice of his claim, and Whelen purchased without any knowledge of the same.

The Northern Central Railway Company filed an answer, in which it is stated that it had no knowledge of plaintiff's claim, and on February 27th 1863 it entered into a lease of the railroad and property with the Shamokin Valley and Pottsville Railroad Company, and it is now in possession of and operating the railroad, &c.

William M. Rockefeller, Esq., was appointed master. He reported that the Philadelphia and Sunbury Railroad Company executed, August 5th 1852, its mortgage to secure bonds to the amount of $700,000 to Shepherd Knapp; that it made, August 19th 1852, a contract with McGrann *et al.* for work on the main line of the road; that it subsequently concluded to build a branch, known as the above, and requested McGrann *et al.* to do this work at the same prices mentioned in the original contract; that McGrann *et al.* gave plaintiff the work of completing the branch; with the knowledge of the company he did this work; that there was due plaintiff for this work a balance, for which he obtained a judgment against the company; that the work was commenced in 1852 or 1853 and finished in 1854; that the 23d day of July 1855 the company made its mortgage to Priestley to secure $500,000 of bonds; that proceedings of foreclosure were commenced on this mortgage and the property, November 2d 1857, sold to Whelen, who conveyed to Shamokin Valley and Pottsville Railroad Company, a company organized by the purchasers, represented by Whelen; that this company settled with Barry and McGrann for a balance due them, but this did not include the amount due plaintiff; that plaintiff brought suit, July 11th 1859, in the name of McGrann *et al.* to his use, against the Philadelphia and Sunbury Railroad Company, known by the name of the Shamokin Valley and Pottsville Railroad Company; that there was no appearance by the first-named

[Shamokin Valley & Pottsville Railroad Co. v. Malone.]

company and the last-named company appeared by counsel and filed a plea, which was lost. The action was in covenant, and the plea was: the covenants were not the deed of the last-named company; that the case having been withdrawn from the jury, a judgment by default was entered against the Philadelphia and Sunbury Railroad Company and in favor of the Shamokin Valley and Pottsville Railroad Company on its plea, the court being of opinion that this company was not a party to the agreement sued on; that a lease was made February 27th 1863 to the Northern Central Railway Company; that plaintiff never consented to the second mortgage given by the Philadelphia and Sunbury Railroad Company to Priestley and knew nothing about it; that Whelen had no notice of plaintiff's claim when he purchased the railroad.

The master found that the plaintiff had no legal claim against the defendants below and was not entitled to the relief prayed for. Exceptions were filed to this report, and were dismissed August 19th 1872, and the report confirmed by a decree *pro forma.* An appeal was taken to the Supreme Court and this decree confirming the report reversed; Justice SHARSWOOD delivering the following opinion:—

" It is very plain upon the record that this case was not in a condition for a final hearing and decree in the court below. The Northern Central Railway Company were merely formal but necessary parties. They were made parties—appeared specially by their solicitor—and a rule was taken and served upon them to answer; but as to them no further proceedings appear. The bill was not taken *pro confesso* as against them.

" The Shamokin Valley and Pottsville Railroad Company put in their answer, a replication was filed, and the case went to an examiner and master for proofs and a report. To make a final decree now, adverse even to the Shamokin Valley and Pottsville Railroad Company alone, would not end the cause.

" It must be subject to the rights and equities of the Northern Central Railway Company. They would still have a right by coming in with an answer, to contest the liability of the Shamokin Company, under whom, as the bill charges, they came in as lessees, and are at present in possession of the road, as well as set up any equities of their own. The plaintiff below was entitled to a decree *pro confesso* as against them, but he did not move for it, and the court below would, in all probability, have required notice of such a motion before entering the decree. Under the state of the record, all that can be done is to reverse and remit the cause to the court below for further proceedings."

The record having been remitted (the former master having been elected a judge of the Court of Common Pleas of Northumberland county), S. H. Kase, Esq., was appointed master, who reported the facts substantially as found by the first master, and concluded that

by reason of the resolution of the General Assembly of 1843, in regard to the lien of contractors, the mortgage of the Philadelphia and Sunbury Railroad Company to Priestley, to secure bonds to the amount of $500,000, was void as to the plaintiff, and there was due him $15,777.04, and that a decree be made that the same be paid, and if not paid, that the railroad and property of the Shamokin Valley and Pottsville Railroad Company be sold to satisfy the same.

This report was confirmed by the court below, and a decree made :—

"That the sum of $15,774.04, with interest thereon from June 5th 1875 and costs, should be paid by the Shamokin Valley and Pottsville Railroad Company, and in default of payment thereof that the said sum of $15,774.04, with interest thereon from the 5th day of June 1875, and costs, should be paid by the Northern Central Railway Company out of the rents and moneys covenanted and agreed to be paid by the said company to the Shamokin Valley and Pottsville Railroad Company, under the terms of the lease of the Shamokin Valley and Pottsville Railroad Company to the said the Northern Central Railway Company, dated the 27th day of February 1863, on or before the first day of March next, and that the said Northern Central Railway Company be thereupon discharged as against the said Shamokin Valley and Pottsville Railroad Company for the said sum or so much thereof as should be paid by the Northern Central Railway Company. And further, that upon the 1st of March next, in default in the payment of the said sum of $15,774.04, with interest thereon and costs as aforesaid, by the said Northern Central Railway Company, within the time aforesaid, then the real estate, property and franchises of the Shamokin Valley and Pottsville Railroad Company acquired under the proceedings upon a certain mortgage of the Philadelphia and Sunbury Railroad Company to Joseph R. Priestley, trustee, dated the 23d day of July 1855, viz., the railroad of the said company from its terminus at Sunbury to its intersection with the extension of the Mine Hill and Schuylkill Haven Railroad as aforesaid, with its corporate franchises and appurtenances, together with its locomotive-engines and cars, and also all those seven several tracts of land situate, lying and being on the waters of Shamokin creek, in the counties of Northumberland and Montour, in the state of Pennsylvania, should be sold to pay the same, and a writ of fieri facias should issue to sell the same."

Defendants below appealed, and assigned the following errors : That the court erred in confirming the report; in declining to decide that the mortgage of the Philadelphia and Sunbury Railroad Company to Priestley was a valid mortgage, and that Whelen's title under it was free and discharged from all liens of contractors ; in refusing to decide that the sheriff's sale to Whelen divested the

lien for work done by a contractor; in refusing to decide that the release of McGrann and Barry operated as a release of plaintiff; in refusing to decide that the judgment in plaintiff's suit, to August Term 1859, No. 137, was a bar to the bill filed by him; in overruling the plea of the Statute of Limitations; in making the decree, because plaintiff had his remedy at law; and in not dismissing the plaintiff's bill.

*Wayne MacVeagh, J. B. Packer* and *W. C. Packer*, for appellants.—Under the resolution of January 21st 1843, a mortgage made by a railroad is not absolutely void, but is simply voidable as against a contractor who has not assented to it.　The statute of 13 Elizabeth against fraudulent deeds and conveyances, &c., declares "that all such conveyances, &c., made with intent to delay, hinder or defraud creditors, shall be deemed and taken, as against such person as might be hindered, delayed or defrauded, to be clearly and utterly void, frustrate and of none effect." A conveyance void as to creditors is good as against the grantor and those claiming under him: Hartley *v.* McAnulty, 4 Yeates 95; Church *v.* Church, Id. 280; Reichart *v.* Castator, 5 Binn. 109; Sherk *v.* Endress, 3 W. & S. 255; Buehler *v.* Gloninger, 2 Watts 226; Cook *v.* Grant, 16 S. & R. 211; Telford *v.* Adams, 6 Watts 429; Dannels *v.* Fitch, 8 Barr 495; Moser *v.* Mayberry, 7 Watts 14; Murphy *v.* Hubert, 4 Harris 50.

The railroad and property having been sold under proceedings by a scire facias on the mortgage, the purchaser takes a title free from all liens: Hartman *v.* Ogden, 4 P. F. Smith 120.　A mortgage is a security for the payment of money: Rickert *v.* Madeira, 1 Rawle 328; Asay *v.* Hoover, 5 Barr 21; Ackla *v.* Ackla, 6 Id. 228.　The mortgage to Priestley did not disturb plaintiff's lien, and cannot be held to be void.

If the legislature, by the resolution of 1843, intended to secure contractors the right to resort to the property of the incorporated company to enforce the duties imposed upon them by their contracts, as in the case of a covenant for the right of re-entry by a lessor to secure the arrears of a perpetual rent by applying the profits for that purpose, or to forfeit the estate upon failure to pay the rents, the lien or liability of that character would have been discharged by the sheriff's sale: Wood's Appeal, 6 Casey 274; Bantleon *v.* Smith, 2 Binn. 146; Dougherty's Estate, 9 W. & S. 189; Spangler's Appeal, 6 Casey 277; Ter-Hoven *v.* Kerns, 2 Barr 96; Pancoast's Appeal, 8 W. & S. 381; Bank *v.* Fitzsimons, 3 Binn. 358.

A judicial sale discharges the land from all liens except mortgages: Hellman *v.* Hellman, 4 Rawle 440; McLanahan *v.* Wyant, 1 P. & W. 112; Lobach's Case, 6 Watts 167; Reed *v.* Reed, 1 W. & S. 235; Commissioners of Spring Garden's Appeal, 8 Id. 444; Swar's Appeal, 1 Barr 92; Stiles *v.* Brock, Id. 218; McKenzey's Appeal,

[Shamokin Valley & Pottsville Railroad Co. *v.* Malone.]

3 Id. 159; Mohler's Appeal, 5 Id. 420; Lauman's Appeal, 8 Id. 473; Mather *v.* McMichael, 1 Harris 302; Bantleon *v.* Smith, *supra*, reiterated by Pancoast's Appeal, *supra;* Dougherty's Estate, *supra;* Ter-Hoven *v.* Kerns, *supra;* Hiester *v.* Green, 12 Wright 96; Strauss's Appeal, 13 Id. 353; Aulenbaugh *v.* Umbehauer, 8 Watts 48; Custer *v.* Detterer, 3 W. & S. 28.

When land is subject to a legacy and is sold on execution, the vendee takes it discharged from the lien of legacy : Barnet *v.* Washebaugh, 16 S. & R. 410; Randolph's Appeal, 5 Barr 425; McLanahan *v.* Wyant, *supra.* The contractors who had the lien, if any, were McGrann *et al.*, and not the plaintiff, a sub-contractor : McBroom & Wood's Appeal, 8 Wright 94. The Statute of Limitations bars plaintiff's claim : Hamilton *v.* Hamilton, 6 Harris 20; Waterman *v.* Brown, 7 Casey 161; Conover *v.* Conover, 1 Saxton 403; Stackhouse *v.* Barston, 10 Vesey 453; 1 Daniel's Ch. 663; Story Eq. Pl., § 716; Jones *v.* Turberville, 2 Ves., Jr. 11; Shipton *v.* Janney, 13 Pet. 381; Kerr on Frauds 304; Beckford *v.* Wade, 17 Vesey 87, 97; Badger *v.* Badger, 2 Wall. 94. The plaintiff has his remedy at law : Tillmes *v.* Marsh, 17 P. F. Smith 507; North Penna. Railroad Co. *v.* Snowden, 6 Wright 488; Schlecht's Appeal, 10 P. F. Smith 172; Clark's Appeal, 12 Id. 447.

*J. W. Comly* and *S. P. Wolverton,* for appellee.—Under the resolution of 1843 the mortgage by Philadelphia and Sunbury Railroad Company to Priestley was void: Angell & Ames on Corporations 249, section 265; Jackson *v.* Summerville, 1 Harris 370; Kerr on Fraud and Mistake 51; Bump on Fraudulent Conveyances 475. The plaintiff could not have come upon the fund arising from the sheriff's sale on this mortgage because null and void, and plaintiff's claim was not divested by the sale : Fisher's Appeal, 9 Casey 294; Hoffman's Appeal, 8 Wright 95.

The mortgage to Priestley being void, all proceedings under it were also void. The purchasers were not strangers, but were the bondholders, and notice was not necessary.

The plaintiff's claim was a lawful claim and the subsequent mortgage to Priestley and the proceedings under it cannot sweep it away : Fox *v.* Seal, 22 Wall. 424. Tyrone & Clearfield Railway Co. *v.* Jones, 29 P. F. Smith 60, follows and adopts Seal *v.* Fox, *supra.* As to the amount of plaintiff's claim the judgment is conclusive : Davidson *v.* Thornton, 7 Barr 131; Huffsmith *v.* Levering, 3 Whart. 115; Hauer's Appeal, 5 W. & S. 475; Tarbox *v* Hays, 6 Watts 401; Hazelett *v.* Ford, 10 Id. 102.

Mr. Justice SHARSWOOD. delivered the opinion of the court, October 11th 1877.

It is very clear upon the evidence that the plaintiff, James Ma-

lone, was a contractor under the Philadelphia and Sunbury Railroad Company, and constructed for them a branch of their railroad on the same terms as McGrann and others constructed by written articles the main road. There was no written contract for the branch. McGrann and partners agreed to do the work, and then turned it over to Malone, who was recognised and dealt with by the company as the contractor. Subsequently to the completion of the contract, the Philadelphia and Sunbury Railroad Company executed a mortgage to Joseph R. Priestley, dated July 23d 1855, under which its franchises and property were sold, and were subsequently vested in the Shamokin Valley and Pottsville Railroad Company, who were incorporated by Act of Assembly of March 25th 1858. To August Term 1859 of the Court of Common Pleas of Northumberland county, Malone commenced an action of covenant in the name of McGrann and others, to his use, against "the Philadelphia and Sunbury Railroad Company, now known by the name and style of the Shamokin Valley and Pottsville Railroad Company." The process is returned served on "A. R. Fiske, he being superintendent of the road." The Philadelphia and Sunbury Company having at that time ceased to exist, and having no road to be superintended, we may assume that A. R. Fiske was the superintendent of the Shamokin Valley and Pottsville road. There was no appearance for the Philadelphia and Sunbury, but a special appearance for the Shamokin Valley and Pottsville. They filed a special plea, which is now lost. Nevertheless, the court entered judgment by default against the Philadelphia and Sunbury, and on the special plea in favor of the Shamokin Valley and Pottsville, being of the opinion that the latter company was not a party to the agreement and not a party to the suit. Upon an inquisition on the judgment, the plaintiff's damages were assessed at $8693.33. This whole proceeding was a tissue of blunders. The suit should not have been in the name of McGrann and others, but of Malone. The defendants were sued as one corporation, known by different names. The declaration should not have been in covenant on the sealed contract with McGrann and others to build the main road, but in assumpsit on the parol agreement for the branch. No judgment by default should have been entered against an extinct corporation, as the Philadelphia and Sunbury Railroad Company was at the institution of the suit, upon which no service had been or could have been made. And the judgment in favor of the Shamokin Valley and Pottsville Railroad Company was also wrong, if the judge was right in holding as he did, and there seems to be very good reason for it, that that company were not parties to the suit. The only defendant was the Philadelphia and Sunbury Company, with an alias which was not true. How could there be a judgment in favor of a person not a party to the suit, carrying with it a necessarily cor-

4 Norris—3

[Shamokin Valley & Pottsville Railroad Co. *v.* Malone.]

respondent right to recover costs against the plaintiff? We must concede therefore this judgment to have been a nullity. But it is alleged that laying it aside there was no evidence of the amount of the plaintiff's claim or debt. Such appears to have been the opinion of the learned judge below. But it appears to us that there was sufficient evidence of this apart from the judgment. Malone testified: "They (the Philadelphia and Sunbury Company) never denied but that the final estimate was due to me and they always acknowledged it. They offered to pay me in the stock of the company in full, but I never had agreed to take stock and I declined to take it. I brought a suit on the agreement in the name of Richard McGrann and others to my use, and recovered a judgment against the Philadelphia and Sunbury Railroad Company for doing the work. The work which I done under the said contract, and for which I recovered said judgment was not work at the basin. That was a separate work." The testimony of Kline confirms this statement. Surely under this evidence, the master had a right to use the record of that proceeding to ascertain the amount of the claim. Had Malone stated that the amount of his claim for which the recovered judgment was $8693.33, it would not have been more distinctly in evidence than by this reference. In truth, the whole case shows that the amount of the claim was not at that time a matter in dispute.

It is contended, however, that if this judgment was a nullity, then the plaintiff's claim at the commencement of this proceeding in equity was barred by the Statute of Limitations. But in this contention the seventh section of the Act of Assembly of April 25th 1850, Pamph. L. 570, has been overlooked. That section declares that "the provisions of the Act of 27th of March 1713, entitled 'an act for the limitation of actions,' shall not hereafter extend to any suit against any corporation or body politic which may have suspended business or made any transfer or assignment in trust for creditors, or who may have at the time or after the accruing of the cause of action in any manner ceased from or suspended the ordinary business for which said corporation was created." Malone finished his work on the contract in 1854, and his cause of action then accrued. On the 2d of November 1857, the Philadelphia and Sunbury road was sold by the sheriff to Edward S. Whelen—the corporation became extinct, and necessarily "ceased from the ordinary business for which it was created." The Statute of Limitations then stopped running and the legal bar is not in the plaintiff's way.

How then does the case stand? The Philadelphia and Sunbury Railroad Company, on the 23d day of July 1855, was indebted to Malone for work done under a contract for building a branch of their road. On that day they executed a mortgage to Joseph R. Priestley for the sum of $500,000, upon which a scire facias was

issued, judgment entered, a levari facias issued, and a sale by the sheriff to Edward S. Whelen as trustee for bondholders who were subsequently incorporated as the Shamokin Valley and Pottsville Railroad Company. By the joint resolution of the Assembly of January 21st 1843, Pamph. L. 367, it was declared that from and after its passage "it should not be lawful for any company incorporated by the laws of this Commonwealth and empowered to construct, make and manage any railroad, canal, or other public internal improvement, while the debts and liabilities or any part thereof, incurred by the said company to contractors, laborers and workmen employed in the construction or repair of said improvements remain unpaid, to execute a general or partial assignment, conveyance, mortgage or other transfer of the real or personal estate of the said company, so as to defeat, postpone, endanger or delay these said creditors, without the written assent of the said creditors first had and obtained; and that any such assignment, conveyance, mortgage or transfer shall be deemed fraudulent, null and void against any such contractors, laborers and workmen, creditors as aforesaid." In commenting upon this resolution in the case of Fox *v.* Seal and others in the Supreme Court of the United States, 22 Wallace 424, Mr. Justice STRONG says: "The language of the resolution is too clear to admit of question, that the legislature intended to give to an unpaid contractor a priority of claim to the company's property, over every right that could be acquired by a mortgagee or acquired under a mortgage, if the mortgage was made after the debt to the contractor was incurred. It was at least intended that the property, into whosesoever hands it might come, should remain subject to a paramount claim of the contractor so long as the debt due to him remained unpaid. That this was substantially giving to him a lien of indefinite duration seems quite plain. It was not a '*jus in re*' nor a '*jus ad rem*,' but it was a charge upon the property, a right to prevent any disposition of it by which it could be withdrawn from the creditor's reach, and, therefore, in a very legitimate sense an equitable lien. The resolution in effect declared that while his claim against the company exists, a subsequent mortgage or transfer cannot be set up to defeat the contractor's resort to the property and his superior right to have it applied to the payment of the debt due him. It is true the mode of that resort is not prescribed. It can only be by suit, judgment and execution, but whenever judgment and execution are obtained, the lien is made to precede the lien of any mortgage or the effect of any conveyance; more accurately, it has the effect it would have were there no mortgage or conveyance in existence. The property may be levied upon and sold and the proceeds may be applied to the satisfaction of the debt due the contractor, without possible interference by the mortgagee, though the mortgage preceded the judgment in time. We cannot regard the resolution

[Shamokin Valley & Pottsville Railroad Co. *v.* Malone.]

as no more than a partial re-enactment of the statute of 13 Elizabeth, invalidating mortgages and transfers only when there is an actual or constructive intent to hinder, delay or defraud creditors. If that was all the resolution intended it was unnecessary and unmeaning. But it declares null and void every mortgage the effect of which is to defeat, postpone, endanger or delay contractors, laborers and workmen. The mortgage may be good as against other creditors, but it is a nullity as to them." If this reasoning be sound, and we consider it to be incontrovertible, then nothing but the written assent of the creditor first had and obtained according to the words of the resolution can render the mortgage available as against him. His knowledge and silence cannot estop him. The plea of a bona fide purchase without notice under the mortgage must be ineffectual. The mortgage being void, the judicial sale under it is equally so, so far as regards the paramount lien of his debt. The purchaser is bound to inquire and know whether any such lien exists, and he purchases at his own peril.

It only remains to consider whether the plaintiff had a right under the circumstances to invoke the interposition of a court of equity. On general principles, if there is no special obstacle in his way, undoubtedly he could. Nothing is better settled than that the assets of an insolvent corporation are a fund for the payment of its debts. The holders of such property take it charged with a trust in favor of such creditors which a court of equity will enforce. A court, which never allows a trust to fail for want of a trustee, will see to the execution of that trust, although by the dissolution of the corporation the legal title to its property has been changed: Curran *v.* The State of Arkansas, 15 Howard 307. "The withdrawal of the charter—that is, the right to use the corporate name for the purposes of suits before the ordinary tribunals—is such a substantial impediment to the prosecution of the rights of the parties interested, as would authorize equitable interposition in their behalf, within the doctrine of chancery precedents:" Per Campbell, J., in Bacon *v.* Robertson, 18 Howard 480. Authorities to the same point, both English and American, could easily be multiplied. The assets of the Philadelphia and Sunbury company in the possession of the defendants are still, so far as this plaintiff is concerned, the assets of that company under the resolution of 1843, as if no mortgage had been executed and no judicial sale had taken place. They are charged, as we have seen, with his debt as a paramount and perpetual lien until it is paid. The extinction of the corporation is a substantial impediment to the prosecution of his claim by legal remedies before the ordinary tribunals.

It has been urged, however, that the Act of Assembly of April 4th 1862 (Pamph. L. 235) has given the plaintiff a full and adequate remedy at law, and that his resort to equity is thereby precluded. That act provides that "whenever any incorporated com-

[Shamokin Valley & Pottsville Railroad Co. *v.* Malone.]

pany, subject to the provisions of the above resolution (of 1843), shall divest themselves of their real or personal estate, contrary to the provisions of said resolution, it shall and may be lawful for any contractor, laborer or workman employed in the construction or repair of said company, having obtained judgment against the said company, to issue a scire facias upon said judgment, with notice to any person or to any incorporated company, claiming to hold or own said real or personal estate, to be served in the same manner as a summons upon the defendant, if it can be found in the county and upon the person or persons or incorporated company claiming to hold or own such real estate ; and upon the return of one nihil and service as aforesaid, on the person or persons or company claiming to hold or own as aforesaid, the case to proceed as in other cases of scire facias on judgment against terre tenants." It is very plain that the plaintiff has no remedy under this act. The Philadelphia and Sunbury Company was an extinct corporation before he commenced any suit, and those proceedings, as we have seen, were a nullity. He can obtain no valid judgment upon which he can issue a scire facias, to enforce by legal process the collection of his debt.

It is true that in many respects the plaintiff's bill is defective. It did not place his claim for equitable relief upon the proper grounds. The defects were clearly amendable : Wilhelm's Appeal, 29 P. F. Smith 120. The defendants did not demur, but went to proofs ; there have been two masters' reports, and there has been great delay and expense. The proofs show that he is entitled to the relief he prays. In such a case we ought not to send the record back for amendments to the bill, but should in this court consider that as done which ought to have been done. In Danzeisen's Appeal, 23 P. F. Smith 65, the bill set up a trust either *ex maleficio* or by a parol declaration, which the proofs did not sustain and the bill was dismissed at Nisi Prius. On appeal, this court considered that the proofs did establish a mortgage, and without remitting the case to the Nisi Prius, made a decree accordingly.

> Decree affirmed, and appeal dismissed at the costs of the appellants.